



**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

_____
**United States Bankruptcy Judge**

**Signed January 14, 2013**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| STEEL STADIUMS, LTD., *ET AL.* | § § | |
| DEBTORS. | § § | |
| | § | CHAPTER 7 |
| SERVICE STEEL WAREHOUSE CO., L.P., | § § | |
| PLAINTIFF, | § | CASE NO. 11-42632-DML |
| | § | JOINTLY ADMINISTERED |
| V. | § § | |
| STEEL STADIUMS FAB. L.P., *ET AL.* | § | ADVERSARY NO. 11-4205-DML |
| DEFENDANTS, | § § | |
| AND | § § | |
| MERIDIAN BANK TEXAS, | § § | |
| THIRD PARTY DEFENDANT. | § § | |

### MEMORANDUM OPINION AND ORDER

Before the court is the *Motion to Dismiss* (the "Motion," at docket no. 26)[1] filed by John Dee Spicer, chapter 7 trustee (the "Trustee") of the jointly administered estates of Steel Stadiums FAB, Ltd. and Steel Stadiums Ltd. ("FAB" and "Limited," respectively, and collectively "Debtors") in the Adversary.

The court exercises core jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(K).[2] This memorandum opinion constitutes the court's conclusions of law. FED. R. BANKR. P. 7052.[3]

For the following reasons, the Motion will be **GRANTED**.

## I. BACKGROUND

Rule 7012(b) makes Federal Rules of Civil Procedure 12(b)-(i) "appli[cable] in adversary proceedings." As a result, in the context of a motion to dismiss, this court will accept all well-pleaded facts pled by the non-movant as true and view them in the light most favorable to the non-movant. *E.g.*, *Vanderbrook v. Unitrin Preferred Ins. Co. (In re Katrina Canal Breaches Litig.)*, 495 F.3d 191 (5th Cir. 2007) (citing *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

Service Steel Warehouse Co. ("Plaintiff") alleges the following facts:[4] Debtors are in the business of fabricating and installing steel products in football stadiums around the country. To

---

[1] Unless otherwise noted, "at docket no." refers to the corresponding docket entry in the above-captioned adversary proceeding (the "Adversary"). To refer to the docket in the main bankruptcy case, Case No. 11-42632-DML-7, the court will use the term "Bankruptcy Case" followed by the docket number. "Ex." refers to one or more exhibits to the cited docket entry.

[2] "Core proceedings include, but are not limited to –
  (K) determinations of the validity, extent, or priority of liens . . ."
28 U.S.C. § 157(b)(2) (2006).

[3] Hereinafter "Rule" will refer to the Federal Rules of Bankruptcy Procedure unless otherwise noted.

2

ensure access to the cash flow necessary to operate their business, Debtors entered into a multi-million dollar line of credit with third party defendant Meridian Bank Texas ("Meridian"). Debtors executed a security agreement to collateralize this line of credit, by which Debtors granted Meridian a security interest in all of Debtors' property, including their equipment and inventory. *See* Bankruptcy Case, docket no. 26, Ex. E. Meridian perfected its security interest by filing UCC-1 financing statements. *Id.* at Ex. F. The parties do not dispute that Meridian is presently undersecured.

Plaintiff is a supplier of steel materials. Beginning in April 2010,[5] at Debtors' request, Plaintiff furnished FAB with over $300,000 worth of steel for use in Debtors' fabrication business. Plaintiff delivered the steel to Debtors at Debtors' request, and Debtors accepted the shipments from Plaintiff. Following delivery, Debtors failed to pay for any of the steel.

During mid-2010,[6] Debtors requested that Plaintiff deliver additional steel materials. Plaintiff requested that Debtors pay their past due balance and execute a credit agreement and personal guaranty before Plaintiff shipped the additional materials. Representatives of Debtors met with representatives of Plaintiff, at which time Debtors represented to Plaintiff that Debtors were financially solvent. In actuality, however, Debtors' line of credit with Meridian had matured, and Meridian was demanding payment and actively seizing Debtors' assets. Plaintiff

---

[4] Except where otherwise indicated, these facts are derived from Plaintiff's *Original Petition* ("Original Petition," at docket no. 2, Ex. B) and *[Plaintiff's] First Amended Original Complaint Pursuant to Bankruptcy Rule 7014(A)(2)(D)* ("Amended Original Complaint," at docket no. 16).

[5] While the Original Petition does not specify whether Plaintiff and Debtors entered into any business transactions together prior to April 2010, the Amended Original Complaint ¶ 9 suggests that Plaintiff and Debtors had entered into steel transactions prior to this date, and that Debtors failed to pay for some or all of these previous steel shipments.

[6] The Original Petition alleges that this request occurred in July, *see* ¶ 10, whereas the Amended Original Complaint alleges that this request occurred in April, *see* ¶ 9. The exact timing is immaterial to the court's ruling.

then delivered the additional steel materials on the basis of Debtors' representation of solvency and the execution of the credit agreement.

Despite Plaintiff's repeated demands for payment, Debtors failed to pay Plaintiff the outstanding sum of $306,946.26, covering the total unpaid amount of the steel materials, plus interest. As a result, Plaintiff filed suit against Debtors in Texas state court on August 17, 2010, claiming fraud and seeking rescission of the contracts to sell steel materials to Debtors. *See* docket no. 2, Ex. B. Plaintiffs likewise applied for a writ of sequestration in Texas state court on September 2, 2010, seeking to prevent Meridian from seizing the steel materials. *See id*. Ex. A.

Entities unrelated to this Adversary commenced an involuntary chapter 7 bankruptcy case against Limited on September 17, 2010. *See* Case No. 10-46088-DML-7, docket no. 1. Meridian, along with entities unrelated to the Adversary, commenced an involuntary chapter 7 bankruptcy case against FAB on May 2, 2011. *See* Bankruptcy Case at docket no. 1. The court entered an order to jointly administer Debtors' bankruptcy cases on October 7, 2011. *See* Bankruptcy Case at docket no. 67. Plaintiff then removed its suit against Debtors to the United States Bankruptcy Court for the Southern District of Texas pursuant to 28 U.S.C. § 1452, and that court then transferred the suit to this court. *See* docket nos. 1-2. Plaintiff then amended the Original Petition and refiled it as a complaint in the Adversary, again asserting claims for fraud and rescission.

On September 23, 2011, the Court entered its *Order Granting Meridian['s] Motion for Relief from the Automatic Stay and Tax Units' Amended Motion for Relief from Automatic Stay* (the "Lift Stay Order," at Bankruptcy Case docket no. 65), in which the court permitted Meridian to "exercise all of its rights under applicable state law with regard to the" collateral securing its loans to Debtors, subject to exceptions not relevant here. Lift Stay Order at 2.

On December 2, 2011, Meridian filed a third party claim against Plaintiff at docket no. 6, seeking a declaration that it held a security interest in certain steel sold by Plaintiff to FAB that was superior in priority to any interest Plaintiff held in the steel. Meridian moved for summary judgment, and the court issued its *Order Granting [Meridian's] Motion for Summary Judgment* (the "Summary Judgment Order," at docket no. 20) on May 15, 2012, which reads in relevant part as follows:

> It is therefore,
>
> ORDERED, ADJUDGED AND DECREED that the lien of Meridian on [FAB]'s steel and steel inventory is senior to any lien or security interest of [Plaintiff]; it is further,
>
> ORDERED, ADJUDGED AND DECREED that any and all relief requested in Meridian's Motion for Summary Judgment that is not expressly granted herein is denied.

The Adversary was set for a July 26, 2012 trial docket call before the court (the "Docket Call"). The parties dispute whether a hearing was actually to take place on this date and whether the parties were required to submit pre-trial documents to the court beforehand, but it is undisputed that Plaintiff did not appear at the Docket Call and did not file pre-trial documents with the court.[7]

On August 13, 2012, the Trustee filed the Motion and certified that all parties were served with same. The Trustee argues that the Adversary should be dismissed because any disputes remaining in the Adversary would be better addressed in connection with contested claim proceedings.

Pursuant to N.D. Tex. L.B.R. 7007-1(e), "[a] response and brief to an opposed motion shall be filed within 24 days from the date the motion is filed." Consequently, Plaintiff was

---

[7] *See infra* Section II.E.

5

required to file a response and brief opposing the Motion by September 6, 2012. Plaintiff filed its *Response to Trustee's Motion to Dismiss* (the "Response," at docket no. 28) on September 10, 2012, four days after the deadline had expired.[8] In the Response, Plaintiff argued that the Adversary should not be dismissed because requests for equitable relief, such as rescission, must be asserted in adversary proceedings under Rule 7001(7), and also because an adversary proceeding is necessary to afford *res judicata* effect to the court's ultimate decision on Plaintiff's rescission claims.

On September 11, 2012, Meridian filed its *Reply to [the Response]* (the "Reply," at docket no. 29). The Reply notes Plaintiff's lack of timeliness in filing the Response, suggests that the Summary Judgment Order has already disposed of all live issues in the Adversary, and contends that Plaintiff improperly failed to appear at or prepare for the Docket Call.

The court held a hearing on the Motion on December 17, 2012 (the "Hearing"), at which it heard argument, took the matter under advisement, and set a briefing schedule.

The next day, Plaintiff filed its *Supplemental Brief in Response to [the Motion]* (the "Supplemental Brief," at docket no. 35). The Supplemental Brief outlines Texas rescission case law and disputes Meridian's argument that the Adversary should be dismissed for Plaintiff's alleged failure to appear ready for trial at the Docket Call. The Supplemental Brief does not address Meridian's argument that the Response was untimely filed.

On December 20, 2012, Meridian filed its *Reply to [the Supplemental Brief]* at docket no. 36, which responded to Plaintiff's arguments regarding Plaintiff's alleged failure to prepare for and appear at the Docket Call.

---

[8] Rule 9006 provides that if the last day of a time period specified by "any local rule" is "a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Rule 9006(a)(1)(C). September 6, 2012, the day on which the N.D. Tex. L.B.R. 7007-1(e) deadline expired, was a Thursday, and no legal holiday occurred on that date. Thus, the period expired at the end of that day.

6

## II. DISCUSSION

*A. Plaintiff Failed to Timely Respond to the Motion*

The court notes at the outset that Plaintiff did not respond to the Motion until four days after the deadline to oppose the Motion had expired.  Plaintiff has offered no justification that would excuse its late filing;[9] indeed, the Supplemental Brief does not even acknowledge Meridian's argument that the Response was not timely filed.

The "decision whether to apply [a local] rule strictly or to overlook any transgression" is generally left to the court's discretion.[10]  Courts within the Northern District of Texas "need not consider materials submitted after a reasonable filing deadline."[11]  Where, as here, a party fails to timely oppose a procedurally adequate motion to dismiss, and no extenuating circumstances are present that would justify the court to consider the party's untimely filing instead of striking it,[12]

---

[9] *See infra* note 12.

[10] *Smith v. Ford Motor Co.*, No. 3:04–CV–401–TS, 2004 WL 3700123, at *2 (N.D. Ind. Oct. 22, 2004) (quoting *Stanciel v. Gramley*, 267 F.3d 575, 579 (7th Cir. 2001)).

[11] *Douglas v. Texas*, No. Civ.A. 602CV080C, 2003 WL 22861302, at *1 (N.D. Tex. Mar. 19, 2003).

[12] For instance, courts often forgive the untimely filings of *pro se* litigants.  *See*, *e.g.*, *Foth v. BAC Home Loans Servicing, LP*, No. CV 11–00114 DAE–BMK, 2011 WL 3439134, at *4 (D. Haw. Aug. 4, 2011); *Sakala v. BAC Home Loans Servicing, LP*, CV. No. 10–00578 DAE–LEK, 2011 WL 719482, at *5 (D. Haw. Feb. 22, 2011); *Patterson v. City of Philadelphia*, Civil Action No. 08-2140, 2009 WL 1259968, at *7 (E.D. Pa. May 1, 2009); *Watson v. Mukasey*, 589 F. Supp. 2d 43, 45-46 (D.D.C. 2008); *Ysais v. Richardson*, No. CIV 07-287 JB/RLP, 2008 WL 2230720, at *1 (D.N.M. Mar. 24, 2008).  Plaintiff is not proceeding (and, as a limited company, could not proceed) *pro se* and is therefore not entitled to this greater degree of solicitude.

*See also Smith v. Roberts*, No. C06-5635RJB, 2007 WL 1977140, at *2 (W.D. Wash. July 3, 2007) (untimely response to motion considered where plaintiff was indigent inmate who was allegedly denied timely access to the mails by the correctional facility).

Nor has Plaintiff even alleged excusable neglect.  *See* Rule 9006(b)(1).

7

and the opposing party has not sought leave to file a response out of time,[13] the court may justifiably grant the motion to dismiss.[14]

However, the court believes it is generally preferable to resolve issues on the merits rather than disposing of a party's claims on procedural technicalities,[15] especially where, as here, the response is only a few days late. Hence, the court will consider the arguments in the Response despite its untimeliness.[16]

*B. Meridian's Security Interest Has Priority Over Plaintiff's Putative Rescission Claims*

In the context of a motion to dismiss an adversary proceeding in a bankruptcy case, the non-movant has the burden to state a claim upon which relief may be granted. *E.g.*, *First Am. Title Ins. Co., Inc. v. Cunningham (In re Cunningham)*, Bankruptcy No. 10–BK–41037–SSC, Adversary No. 11–ap–00629–SSC, 2012 WL 6042863, at *8 (Bankr. D. Ariz. Dec. 5, 2012).

---

[13] *See* Rule 9006(b).

*See also, e.g.*, *Pritzker v. City of Hudson*, 26 F. Supp. 2d 433, 438 (N.D.N.Y. 1998); *Knebel v. Wal-Mart Stores, Inc.*, No. 09-CV-262-WDS, 2009 WL 3124769, at *1 n.1 (S.D. Ill. Sept. 24, 2009); *Singer-Aldrich, Inc. v. Open Biosystems, Inc.*, No. 4:06-CV-754 CAS, 2007 WL 1993439, at *1 n.1 (E.D. Mo. July 3, 2007); *Garza v. Tapia*, No. EP-05-CA-197-KC, 2007 WL 709010, at *2 (W.D. Tex. Feb. 26, 2007).

[14] *See, e.g.*, *Ellison v. UPS, Inc.*, Civil Action No. 5:12–cv–05490, 2012 WL 6026490 at *1, *6 (S.D. W.Va. Dec. 4, 2012) (granting motion to dismiss and striking plaintiff's untimely response to the motion to dismiss from the record); *Song v. Regents of the Univ. of Minn.*, Civil No. 11–427 ADM/TNL, 2012 WL 1438899, at *4 n.2 (D. Minn. Apr. 26, 2012).

*Cf. Banks v. City of Fort Worth*, No. 4:09–CV–289–A, 2009 WL 2905718, at *1, *3 (N.D. Tex. Sept. 9, 2009) (granting dual motions to dismiss where plaintiff's response both untimely and nonresponsive).

*But see Simmons v. Countrywide Home Loans, Inc.*, Civil No. 09cv1245 JAH(JMA), 2010 WL 2635220, at *1 n.2 (S.D. Cal. June 29, 2010); *Cranberry Promenade v. Cranberry Township*, Civil Action No. 09–1242, 2010 WL 653915, at *2 (W.D. Pa. Feb. 22, 2010).

[15] *See, e.g.*, *Leal v. Woodley & McGillivary*, Civil Action No. H–08–cv–3452, 2009 WL 7808956, at *1 (S.D. Tex. Aug. 31, 2009); *Patterson*, 2009 WL 1259968 at *7 ("[W]here the interests of justice would be disserved by adherence to the rule's constraints, the court is free to disregard the technical mandates of the rule and focus on the merits.").

[16] *See supra* note 15.

At the Hearing, Plaintiff's counsel correctly acknowledged that, because Meridian is undersecured, "if the Court decides that [Meridian's] lien interest is superior to any rescission claim [by Plaintiff], then obviously [Plaintiff] would be poured out" because Meridian will exhaust its collateral, including Plaintiff's steel, in satisfying its claim. The court must therefore decide whether or not Meridian's security interest is superior to Plaintiff's rescission claims, because an affirmative answer to that question would dispose of the Adversary.

In the Supplemental Brief, Plaintiff conceded the following:

> The question presented by the Court at the [Hearing] was whether[] "Meridian's UCC[-]1 Security Interest had priority over [Plaintiff's] rescission claims, even if [Plaintiff] was successful in proving its rescission claims[."] After thoroughly researching the case[ law], we have discovered no bankruptcy case[ law] specifically addressing the issue . . . .[17]

Nor has this court found any authority precisely on point, despite its own research. The court has, however, found numerous cases that stand for the proposition that a properly-perfected security interest generally trumps other types of equitable remedies similar to rescission, including reclamation,[18] constructive trust,[19] and equitable lien claims.[20] Under section 2-702 of

---

[17] Supplemental Brief at 2.

[18] *See, e.g.*, *In re Reliable Drug Stores, Inc.*, 70 F.3d 948, 949 (7th Cir. 1995) (citing *In re Pester Ref. Co.*, 964 F.2d 842, 844-45 (8th Cir. 1992); *In re Samuels & Co.*, 526 F.2d 1238 (5th Cir. 1976)). These cases were decided under state law before 11 U.S.C. § 546 was amended to make clear that a security interest comes ahead of a reclamation claim. *Compare* 11 U.S.C. § 546(c) (1998) *with* 11 U.S.C. § 546(c) (2006).

[19] *See, e.g.*, *USA Fin. Servs., Inc. v. Steward*, 588 So.2d 299, 302 (Fla. App. 1991); *Tradax Am., Inc. v. First Nat'l Bank in Stuttgart, Ark. (In re Howell Enters., Inc.)*, 105 B.R. 494, 497-99 (Bankr. E.D. Ark. 1989). *See also In re Hurt*, No. 98–20195, 1998 WL 34064493, at *2 (Bankr. S.D. Ga. Nov. 24, 1998). *But see Mid-Atlantic Supply, Inc. v. Three Rivers Aluminum Co.*, 790 F.2d 1121 (4th Cir. 1986).

If, counterfactually, Meridian's lien was *not* properly perfected, then an equitable constructive trust claim might trump its security interest, *see, e.g.*, *Meadows v. Bierschwale*, 516 S.W.2d, 125, 133 (Tex. 1974); 68A AM. JUR. 2D SECURED TRANSACTIONS § 749 (2012) (citations omitted), but here Meridian's security interest was perfected under UCC-1 at the time Debtors took possession of the steel materials. *See* Summary Judgment Order; Bankruptcy Case, docket no. 26, Ex. F.

[20] "[A]s against a perfected secured creditor, a third party's equitable lien claim is treated as unperfected and, therefore, subordinate to the perfected interest." 68A AM. JUR. 2D SECURED TRANSACTIONS § 749 (2012) (citations omitted).

the Texas Business & Commercial Code,[21] "[w]here the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand," *but "[t]he seller's right to reclaim . . . is subject to the rights of a buyer in ordinary course or other good faith purchaser or lien creditor"* (emphasis added).  This is analogous to the instant case: Plaintiff sold Debtors goods on credit while Debtors were insolvent after Debtors allegedly represented that they were in fact solvent.  Debtors took possession of those goods as of right upon delivery, at which point Meridian's lien attached to the goods.[22]  Plaintiff now seeks rescission.  Under the Texas Business & Commercial Code, Plaintiff would be subordinated to Meridian's security interest if Plaintiff were instead seeking reclamation; it is difficult to fathom why the result should be any different where, as here, Plaintiff seeks the comparable equitable remedy of rescission, especially given that neither Plaintiff nor the court has located any case law suggesting a different result.

The Bankruptcy Code[23] likewise subordinates reclamation claims "to the prior rights of a holder of a security interest in such goods or the proceeds thereof."  Code § 546(c)(1).  This demonstrates that Congress knew how to adjust or fix claim priorities with respect to equitable remedies like reformation claims; if Congress wanted rescission claims to trump UCC-1 security interests, it could have done so expressly.

---

*Accord*, *e.g.*, *BancorpSouth Bank v. Hazelwood Logistics Ctr., LLC*, No. 4:10CV590–HEA, 2011 WL 5900998, at *5 (E.D. Mo. Nov. 23, 2011).  Like the lender in *Bancorp*, Meridian perfected its interest through a UCC-1 filing; its security interest therefore trumps equitable claims.  *See* Summary Judgment Order; Bankruptcy Case, docket no. 26, Ex. F.

[21] Texas Business & Commercial Code § 2-702 matches the wording of Uniform Commercial Code § 2-702 virtually verbatim.

[22] *See* TEX. BUS. & COM. CODE ANN. § 2-401(b) (West 2005).

[23] 11 U.S.C. §§ 101 *et seq*. ("Code").

10

The foregoing analysis strongly implies that Plaintiff's rescission claims are inferior in priority to Meridian's security interest. In the absence of any authority cited to this court directly indicating otherwise, Plaintiff has failed to meet its burden of stating a rescission claim upon which relief can be granted, given Meridian's superior position.

*C. This Court's Prior Summary Judgment Order Precludes Plaintiff From Arguing That Meridian Cannot Assert a Security Interest in the Steel Materials*

Acknowledging that it has "discovered no bankruptcy case[ law] specifically addressing" the issue of whether Meridian's security interest has priority over Plaintiff's rescission claims, Plaintiff has presented to the court Texas rescission cases "which may be instructive." Supplemental Brief at 2. Specifically, Plaintiff relies on cases holding that "the effect of a contract rescission is to return the parties to their respective conditions as if no contract had ever existed." *Id*. (citing *Lowrey v. Univ. of Tex. Med. Branch at Galveston*, 837 S.W.2d 171, 174 (Tex. App. 1992)).[24] Thus, argues Plaintiff, "if the contract is rescinded and never existed, then [Debtors] never held an ownership interest in the steel materials. In that case, [Meridian] could not assert a security interest in the material because title never passed from [Plaintiff] to [Debtors]." *Id*. at 3. In other words, Plaintiff essentially argues that Meridian cannot assert *any* security interest in the steel materials *at all* if Plaintiff ultimately succeeds on its rescission claim; rather, the parties would be returned to the *status quo ante*.

If this is correct, then Plaintiff's rescission claim must fail because ruling otherwise would necessarily conflict with the Summary Judgment Order. To reiterate, the court has

---

[24] *Accord Hunt Cty. Oil Co. v. Scott*, 67 S.W. 451, 452 (Tex. Civ. App. 1902) ("The reason of the rule is that on a rescission of a contract the contract is avoided ab initio, and the rights of the parties in reference to the subject-matter of it are as if no contract had ever been made." (quoting *Nash v. Trust Co.*, 40 N.E. 1039, 1041 (Mass. 1895))).

11

previously ruled "that the lien of Meridian on [FAB]'s steel and steel inventory is senior to any lien or security interest of [Plaintiff]." This ruling is necessarily predicated on Meridian's lien on the steel delivered to Debtors by Plaintiff existing in the first place. To now rule otherwise, as Plaintiff requests, would require the court to contradict its prior order. This the court will not do.

### *D. The Lift Stay Order Further Justifies Dismissal of the Trustee*

There is a further reason to at least dismiss the Trustee from the Adversary: the Lift Stay Order permits Meridian to "exercise all of its rights under applicable state law with regard to the" steel materials at issue in the Adversary. This obviates the need for the Trustee's involvement in the Adversary to ensure that the proceeds of Debtors' estates are fairly, efficiently, and expeditiously distributed to creditors.

### *E. Plaintiff's Alleged Failure to Appear for the Docket Call*

Meridian alleges that this matter was set on the July 26, 2012 trial docket, and that Plaintiff both (1) failed to appear at the Docket Call and (2) failed to timely file the requisite pre-trial documents. Reply at 2-3; *see also [Meridian's] Reply to [Plaintiff's] Supplemental Response []* at docket no. 36 at 2-4. Meridian thus argues that the Adversary should be dismissed. Plaintiff responds that the matter was not in fact set for July 26, 2012, and that Meridian could not have possibly believed otherwise because it did not timely file the necessary pre-trial documents either. Supplemental Brief at 3-4; *see also Affidavit of Travis Newport in Response to [Motion]* at docket no. 37.

Having already disposed of the Motion, there is no need to address this issue.

## III. CONCLUSION

The Motion is therefore **GRANTED** and the Adversary is hereby **DISMISSED.**